UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| JERRY LEONARD ELLIS,<br><br>                    Petitioner,<br><br>        v.<br><br>STEVEN LITTLE, Warden, Southern<br>Idaho Correctional Institution,<br><br>                    Respondent. | Case No. 1:15-cv-00515-BLW<br><br>**MEMORANDUM DECISION AND<br>ORDER** |

Pending before the Court is Petitioner Jerry Leonard Ellis's Amended Petition for

Writ of Habeas Corpus, which challenges two state court convictions of felony driving

under the influence ("DUI").[1] (Dkt. 35-1 at 1.) Respondent has filed a Motion for Partial

Summary Dismissal, which is now ripe for adjudication. (Dkt. 39.) Respondent argues

that most of Petitioner's claims are procedurally defaulted, that some are untimely, and

that some are noncognizable. Also pending are several other motions filed by the parties,

including Petitioner's motions to expand the record and for an evidentiary hearing. (Dkt.

37, 42, 43, 47, 50.)

---

[1]        Respondent does not object to Petitioner's Motion to Amend. (*See* Dkt. 36.) Therefore, this
Motion will be granted, and the Amended Petition (Dkt. 35-1) will be separately entered on the docket,
noting the date it was initially submitted.

**MEMORANDUM DECISION AND ORDER - 1**

Having carefully reviewed the record, including the state court record, the Court finds that the parties have adequately presented the facts and legal arguments in the briefs and record and that oral argument is unnecessary. *See* D. Idaho L. Civ. R. 7.1(d). Accordingly, the Court enters the following Order dismissing Claims 1, 2, and 6 through 22 as procedurally defaulted.

## BACKGROUND

The Court takes judicial notice of the records from Petitioner's state court proceedings, which have been lodged by Respondent. (Dkt. 16, 30.) *See* Fed. R. Evid. 201(b); *Dawson v. Mahoney*, 451 F.3d 550, 551 (9th Cir. 2006).

In 2006, in the First Judicial District in Kootenai County, Idaho, Petitioner pleaded guilty to felony DUI ("first DUI case"). (State's Lodging A-1 at 78-79.) He received an indeterminate sentence of three and a half years. However, the trial court suspended the sentence and placed Petitioner on probation. (*Id*. at 90-94.)

During the next two years, Petitioner committed multiple probation violations resulting in the revocation of his probation. However, the trial court retained jurisdiction and placed Petitioner on a rider. (*Id*. at 179-81.) After completion of the rider, Petitioner was again given probation. (*Id.* at 187-94.)

In 2009, Petitioner was charged with another felony DUI ("second DUI case"), to which he pleaded guilty. (State's Lodging A-2 at 309-11.) Petitioner received a unified sentence of 10 years in prison with five years fixed, but the court retained jurisdiction and placed Petitioner on a rider. (*Id*. at 323-27.) The charge in the second DUI case resulted in a charge of probation violation in the first DUI case, and Petitioner was placed on a

rider for that violation as well. (*Id*. at 320-22.) After completion of the riders, Petitioner was again released on probation. (*Id*. at 333-45.)

In January 2011, Petitioner was charged with probation violations in both cases, but instead of revoking probation, the court increased the terms of probation and required that Petitioner complete the mental health drug court program. (*Id*. at 357-60, 409-14.)

Apparently, Petitioner had still not learned his lesson. Not even a year later, he again violated the terms of his probation, this time by failing to comply with the rules of mental health court and by driving without a license. (*Id*. at 439-41.) Petitioner completed yet another rider and was placed back on probation in both cases. (*Id*. at 453-55, 463-68.)

This ongoing cycle of probation, violation, and retained jurisdiction eventually came to an end. In 2013, Petitioner was again charged with violating probation in both cases. Petitioner, represented by a public defender, admitted one violation and disputed another. (*Id*. at 538.) The trial court denied Petitioner's request for a continuance so that he could retain private counsel. (*Id.* at 538-39.) After an evidentiary hearing on the contested violation, the trial court found the violation proven. Petitioner then asked to continue the disposition hearing so that he could call witnesses to testify on his behalf. (*Id*. at 539.) The court denied Petitioner's request—but accepted his offer of proof as true—and immediately proceeded to disposition. (*Id*. at 539-40.) The court revoked Petitioner's probation and imposed the underlying sentences. (*Id*. at 540-41.)

Petitioner appealed the disposition in both cases, which had been consolidated. Petitioner argued that the trial court erred by (1) denying Petitioner's first request for a continuance so he could retain private counsel, and (2) denying Petitioner's second

request for a continuance so he could present witnesses. (State's Lodging B-1.) The Idaho Court of Appeals affirmed, and the Idaho Supreme Court denied review. (State's Lodging B-5, B-8.)

While his direct appeal was pending, Petitioner filed a petition for state post-conviction relief with respect to both DUI convictions. (State's Lodging C-1 at 3-252.) Petitioner was appointed counsel, who filed an amended petition. (*Id*. at 256-64.) The trial court summarily dismissed the petition, and Petitioner filed a notice of appeal. (*Id*. at 268-310, 312-13.) However, Petitioner—through post-conviction appellate counsel—voluntarily dismissed the appeal. (State's Lodging D-4.) Petitioner alleges that he did not consent to counsel's filing of the motion for voluntary dismissal.

In his Amended Petition for Writ of Habeas Corpus, Petitioner asserts the following claims:

> Claim 1:    Petitioner was denied his Fourth Amendment right to be free from unreasonable searches and seizures when his blood was drawn without a warrant.
>
> Claim 2:    Petitioner's privately retained attorney rendered ineffective assistance by (1) failing to investigate the legality of Petitioner's arrest, (2) providing false information and advice to Petitioner regarding the legality of the blood draw, (3) falsely informing Petitioner regarding the need for a warrant for the blood draw, (4) failing to hold a preliminary hearing on the suppression issue, (5) failing to file a motion to suppress, and (6) coercing Petitioner into an involuntary and unintelligent guilty plea.
>
> Claim 3:    Petitioner's Sixth Amendment right to retain counsel of his choice was violated when his request for a continuance was denied during his probation revocation proceeding.

Claim 4:        Petitioner's due process rights were violated when the state trial court failed to notice Petitioner's disposition hearing in conjunction with his probation revocation proceeding, resulting in Petitioner not having an opportunity to prepare a full and proper defense.

Claim 5:        Petitioner's due process rights were violated when the trial court denied Petitioner's request for a continuance of the revocation proceedings based on Petitioner's lack of notice.

Claim 6:        Petitioner's due process rights were violated when the trial court denied a continuance for the purpose of obtaining a mental health evaluation of Petitioner.

Claim 7:        Petitioner was denied adequate medical treatment while Petitioner was in mental health court, in violation of the Eighth Amendment, resulting in Petitioner' impulsive behavior and subsequent incarceration.

Claim 8:        Petitioner's state postconviction petition was erroneously dismissed, resulting in manifest injustice.

Claim 9:        Petitioner's public defender rendered ineffective assistance by (1) failing to adequately communicate with Petitioner, (2) failing to prepare a successful defense, (3) failing to interview witnesses, (4) failing to obtain expert testimony, (5) failing to prepare for the March 21, 2013 hearing, (6) failing to deny the allegations in that hearing, (7) failing to seek approval from the court to obtain a mental health evaluation, (8) failing to inform the court that Petitioner needed a continuance for private counsel to prepare a defense, (9) failing to explain the nature of the proceedings prior to the March 21, 2013 hearing, (10) failing to "inform Petitioner of the course of proceedings," (11) failing to object to due process violations during the March 2013 hearing, (12) acting under a conflict of interest, (13) failing to move to disqualify the judge, and (14) failing to obtain a continuance of the hearing.

Claim 10:       Petitioner's Sixth Amendment rights were violated when the court ordered the public defender to represent Petitioner despite a conflict of interest based on the public defender having been hired as a prosecutor.

Claim 11:    Petitioner's due process rights were violated when the district court judge failed to recuse himself on the grounds of judicial bias.

Claim 12:    Petitioner's due process rights were violated when, during the March 2013 hearing, the court failed to inform him of his "necessary hearing rights" regarding the nature of pleas. This claim also appears to implicate Petitioner's Fifth Amendment right to be free from compelled self-incrimination.

Claim 13:    Petitioner's due process rights were violated because his plea was involuntary and unintelligent.

Claim 14:    Petitioner's due process rights were violated because he was suffering from mental health issues and "medication instability" when he participated in his probation revocation hearing.

Claim 15:    Petitioner's due process rights were violated when he was prohibited from assert the defense of necessity during his March 2013 hearing.

Claim 16:    Petitioner's right to due process was violated because his probation revocation proceeding, the disposition of his motion to transport, and his Rule 35 proceedings were arbitrary and capricious.

Claim 17:    Petitioner's due process rights were violated when he was not allowed to obtain an updated mental health evaluation during his motion to transport and Rule 35 proceedings.

Claim 18:    Petitioner's due process rights were violated when the district court refused to hear argument at Petitioner's Rule 35 hearing.

Claim 19:    Petitioner's counsel rendered ineffective assistance on October 23 and November 5, 2013, by (1) failing to obtain a mental health evaluation with respect to Petitioner's motion to transport, (2) "failing to do any research" on Petitioner's ADHD, including medication Petitioner was taking, (3) failed to set up telephone conferences with Petitioner's doctors prior to Petitioner's Rule 35 hearing, (4) failing to secure expert testimony during the Rule 35 hearing, and (5) failing to assert a necessity defense.

| Claim 20: | Petitioner's Sixth Amendment rights were violated when his appellate counsel (1) failed to include, on direct appeal, all of the issues raised in Petitioner's postconviction petition, (2) failing to argue that the convictions and sentence were in violation of the federal and state constitutions, (3) failing to challenge Petitioner's convictions based on the trial judge's errors, (4) failing to argue that Petitioner's rights were violated under Idaho Criminal Rules 11 and 5.3, (5) failing to appeal the denial of Petitioner's request for a continuance, and (6) failing to inform Petitioner of his ability to file a petition for rehearing with the Idaho Court of Appeals. |
|---|---|
| Claim 21: | Petitioner's due process rights were violated when the district court judge abused his discretion by dismissing Petitioner's postconviction petition, denying Petitioner's request for an evidentiary hearing, and failing to review affidavits or to allow Petitioner to call expert witnesses. |
| Claim 22: | Petitioner's due process rights were violated when a police officer denied Petitioner's request to speak to counsel before submitting to scientific testing. |

(Dkt. 35-1 at 8-32.)

Respondent now argues that all of Petitioner's claims other than Claims 3, 4, and 5 are procedurally defaulted and that some of these claims are untimely or noncognizable.

## PETITIONER'S PENDING MOTIONS

### 1.    Petitioner's Motions to Expand the Record

Rule 7 of the Rules Governing Section 2254 Cases gives a federal court the authority to expand the existing state court record with "materials relating to the petition." One of the purposes of Rule 7 is to permit the court to dispose of habeas petitions without the time and expense of conducting an evidentiary hearing. *See* Advisory Committee Note, Habeas Rule 7.

Petitioner seeks to expand the record with several documents he has submitted. Though some of these documents do not appear relevant, others—particularly those attached to Petitioner's Supplemental Motion to Expand the Record (Dkt. 47)—relate to Petitioner's argument that cause and prejudice exist to excuse the procedural default of his claims.

Therefore, Petitioner's motions to expand the record will be granted in part, to the extent that the Court has considered the documents submitted by Petitioner for purposes of resolving Respondent's Motion for Partial Summary Dismissal. *See Dickens v. Ryan*, 740 F.3d 1302, 1320-21 (9th Cir. 2014) (en banc) (stating that the limitations on consideration of new evidence set forth in 28 U.S.C. § 2254(e)(2) and in *Cullen v. Pinholster*, 131 S. Ct. 1388 (2011), do not apply to gateway procedural issue of cause and prejudice). The Court has not yet determined whether any of these documents may be considered by the Court at a later stage, such as consideration of the merits of Petitioner's claims.

## 2.     Motion for Evidentiary Hearing

Petitioner also requests that the Court hold an evidentiary hearing. (Dkt. 50.) To the extent Petitioner seeks an evidentiary hearing on the merits of his claims, his request is premature and will be denied. This case is still at the motion to dismiss stage of litigation, and the parties have not yet briefed the merits of Petitioner's claims. If it appears at a later date that an evidentiary hearing on the merits is necessary—and permissible under § 2254(e)(2) and *Pinholster*—the Court will issue an appropriate order at that time.

**MEMORANDUM DECISION AND ORDER - 8**

Petitioner also seeks an evidentiary hearing on the procedural default issue.[2] This portion of Petitioner's Motion will be addressed in conjunction with the Court's analysis of that issue below.

## 3. Petitioner's Request for Counsel

In his response to the Motion for Partial Summary Dismissal, Petitioner renews his request for appointment of counsel. (Dkt. 41-1 at 38; *see also* Dkt. 3 at 32, Dkt. 9 at 6-7.)

As the Court has previously explained, there is no constitutional right to counsel in a habeas corpus action. *Coleman v. Thompson*, 501 U.S. 722, 755 (1991). A habeas petitioner has a right to counsel, as provided by rule, if counsel is necessary for effective discovery or an evidentiary hearing is required in his case. *See* Rules 6(a) & 8(c) of the Rules Governing Section 2254 Cases. In addition, the Court may exercise its discretion to appoint counsel for an indigent petitioner in any case where required by the interests of justice. 28 U.S.C. § 2254(h); 18 U.S.C. § 3006A(a)(2)(B). Whether counsel should be appointed turns on a petitioner's ability to articulate his claims in light of the complexity of the legal issues and his likelihood of success on the merits. *See Weygandt v. Look*, 718 F.2d 952, 954 (9th Cir. 1983).

Prior to reaching the merits of the claims in the Petition, the Court must address a narrow procedural issue—whether Petitioner properly presented his federal claims to the Idaho Supreme Court and whether, if he did not, cause and prejudice (or actual

---

[2]     Because this Memorandum does not address Respondent's assertions that some of Petitioner's claims are untimely or noncognizable, Petitioner's request for an evidentiary hearing on these issues will be denied. *See infra*, n.3.

**MEMORANDUM DECISION AND ORDER - 9**

innocence) exists to excuse that failure—for which appointment of counsel is not required. Further, it appears from Petitioner's filings that he has been able to adequately bring his claims and protect his interests to date. The Court understands that Petitioner does not have legal training or legal resources. Therefore, the Court independently reviews the case citations and references provided by the state for accuracy and applicability. The Court also does its own research to determine whether other cases not cited by the State apply. Finally, the appellate review process is available to ensure that the case has been adjudicated according to the proper legal standards. For these reasons, the Court will deny Petitioner's request for counsel.

### RESPONDENT'S MOTION FOR PARTIAL SUMMARY DISMISSAL

For the following reasons, the Court concludes that Claims 1, 2, and 6-22 must be dismissed as procedurally defaulted.[3]

**1.      Standard of Law Governing Summary Dismissal**

The Rules Governing § 2254 Cases ("Habeas Rules") authorize the Court to summarily dismiss a petition for writ of habeas corpus when "it plainly appears from the face of the petition and any attached exhibits," as well as those records subject to judicial notice, "that the petitioner is not entitled to relief in the district court." Habeas Rule 4; *see* Fed. R. Evid. 201(b); *Dawson*, 451 F.3d at 551. Where appropriate, a respondent may file a motion for summary dismissal, rather than an answer. *White v. Lewis*, 874 F.2d 599, 602 (9th Cir. 1989).

---

[3]      Because the Court will dismiss these claims as procedurally defaulted, it need not address Respondent's arguments that some of them are untimely or noncognizable.

## 2.     Claims 1, 2, and 6-22 Are Procedurally Defaulted

### A.     *Procedural Default Standards of Law*

A habeas petitioner must exhaust his or her remedies in the state courts before a federal court can grant relief on constitutional claims. *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). To do so, the petitioner must invoke one complete round of the state's established appellate review process, fairly presenting all constitutional claims to the state courts so that they have a full and fair opportunity to correct alleged constitutional errors at each level of appellate review. *Id.* at 845. In a state that has the possibility of discretionary review in the highest appellate court, like Idaho, the petitioner must have presented all of his federal claims at least in a petition seeking review before that court. *Id.* at 847. "Fair presentation" requires a petitioner to describe both the operative facts and the legal theories upon which the federal claim is based. *Gray v. Netherland*, 518 U.S. 152, 162-63 (1996).

The mere similarity between a federal claim and a state law claim, without more, does not satisfy the requirement of fair presentation. *See Duncan v. Henry*, 513 U.S. 364, 365-66 (1995) (per curiam). General references in state court to "broad constitutional principles, such as due process, equal protection, [or] the right to a fair trial," are likewise insufficient. *See Hiivala v. Wood*, 195 F.3d 1098, 1106 (9th Cir. 1999). For proper exhaustion, a petitioner must bring his federal claim before the state court by "explicitly" citing the federal legal basis for his claim. *Lyons v. Crawford*, 232 F.3d 666, 669 (9th Cir. 2000), *as amended*, 247 F.3d 904 (9th Cir. 2001).

When a habeas petitioner has not fairly presented a constitutional claim to the highest state court, and it is clear that the state court would now refuse to consider it because of the state's procedural rules, the claim is said to be procedurally defaulted. *Gray*, 518 U.S. at 161-62. Procedurally defaulted claims include those within the following circumstances: (1) when a petitioner has completely failed to raise a claim before the Idaho courts; (2) when a petitioner has raised a claim, but has failed to fully and fairly present it as a *federal* claim to the Idaho courts; and (3) when the Idaho courts have rejected a claim on an adequate and independent state procedural ground.[4] *Id.*; *Baldwin v. Reese*, 541 U.S. 27, 32 (2004); *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

### B.    Discussion

The most straightforward manner in which to resolve the exhaustion and procedural default status of Petitioner's federal claims is to review which claims were raised and addressed on the merits in the state court appellate proceedings. The only issues that Petitioner raised through the level of the Idaho Supreme Court are (1) the denial of his first request for a continuance to retain private counsel, and (2) the denial of his second request for a continuance to call witnesses on Petitioner's behalf, both of which were raised on direct appeal. These issues correspond to Claims 3, 4, and 5 of the Petition.

---

[4]    To be an "adequate" state ground, a procedural bar must be one that is "'clear, consistently applied, and well-established at the time of the petitioner's purported default." *Martinez v. Klauser*, 266 F.3d 1091, 1093 (9th Cir. 2001) (quoting *Wells v. Maass*, 28 F.3d 1005, 1010 (9th Cir. 1994)). A state procedural bar is "independent" of federal law if it does not rest on, and if it is not interwoven with, federal grounds. *Bennett v. Mueller*, 322 F.3d 573, 581 (9th Cir. 2003).

Though Petitioner initially appealed the dismissal of his state post-conviction petition, Petitioner—through counsel—later dismissed that appeal. Therefore, none of Petitioner's claims were presented to the Idaho Supreme Court in that appeal.

Because Petitioner did not fairly present Claims 1, 2, or 6-22 to the Idaho Supreme Court, and because it is now too late to do so, those claims are procedurally defaulted. *See Gray*, 518 U.S. at 161-62.

**3.     Petitioner Has Not Established Cause and Prejudice, or Actual Innocence, to Excuse the Default**

That Claims 1, 2, and 6 through 22 are procedurally defaulted does not end the inquiry. If a claim is procedurally defaulted, a federal district court can still hear the merits of the claim if the petitioner meets one of two exceptions: (1) a showing of adequate legal cause for the default and prejudice arising from the default, or (2) a showing of actual innocence, which means that a miscarriage of justice will occur if the constitutional claim is not heard in federal court. *Murray v. Carrier*, 477 U.S. 478, 488 (1986); *Schlup v. Delo*, 513 U.S. 298, 329 (1995). "An evidentiary hearing is not necessary to allow a petitioner to show cause and prejudice [or actual innocence] if the court determines as a matter of law that he cannot satisfy the standard." *Clark v. Lewis*, 1 F.3d 814, 820 (9th Cir. 1993).

Neither an assertion of cause and prejudice nor an assertion of actual innocence under *Schlup* is an independent constitutional claim. Rather, these are federal *procedural* arguments that, if sufficiently established by the petitioner, allow a federal court to consider the merits of an otherwise procedurally-defaulted constitutional claim.

## A.      Cause and Prejudice

To show "cause" for a procedural default, a petitioner must ordinarily demonstrate that some objective factor external to the defense impeded his or his counsel's efforts to comply with the state procedural rule at issue. *Murray*, 477 U.S. at 488. To show "prejudice," a petitioner generally bears "the burden of showing not merely that the errors [in his proceeding] constituted a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire [proceeding] with errors of constitutional dimension." *United States v. Frady*, 456 U.S. 152, 170 (1982).

Cause for the default may exist as a result of ineffective assistance of counsel. For example, the failure on appeal to raise a meritorious claim of trial error—or the failure at trial to preserve a claim for appeal—may render that claim procedurally defaulted. *See Edwards v. Carpenter*, 529 U.S. 446, 452 (2000) ("[I]n certain circumstances counsel's ineffectiveness in failing properly to preserve the claim for review in state court will suffice."). However, for ineffective assistance of counsel ("IAC") to serve as cause to excuse a default, that IAC claim must itself have been separately presented to the state appellate courts. If the ineffective assistance asserted as cause was not fairly presented to the state courts, a petitioner must show that an excuse for that separate default exists, as well. *Id.* at 451 ("[A]n ineffective-assistance-of-counsel claim asserted as cause for the procedural default of another claim can itself be procedurally defaulted.").

A petitioner does not have a federal constitutional right to the effective assistance of counsel during state post-conviction proceedings. *Pennsylvania v. Finley*, 481 U.S. 551, 554 (1987); *Bonin v. Vasquez*, 999 F.2d 425, 430 (9th Cir. 1993). As a result, the

general rule is that any errors of counsel during a post-conviction action cannot serve as a basis for cause to excuse a procedural default, because the petitioner bears the risk of attorney errors in such proceedings. *Coleman*, 501 U.S. at 752.

However, the Supreme Court established an exception to that general rule in *Martinez v. Ryan*, 132 S. Ct. 1309 (2012). *Martinez* held that, in limited circumstances, "[i]nadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial." *Id.* at 1315. The Ninth Circuit has concluded that the *Martinez* exception—which addressed underlying claims of ineffective assistance of trial counsel ("IATC")—can also apply to claims of ineffective assistance of direct appeal counsel ("IADAC"). *Nguyen v. Curry*, 736 F.3d 1287, 1293-94 (9th Cir. 2013).[5] *Martinez* does not apply to any claims other than IAC claims, and it can apply only if the underlying IAC claim is exhausted and procedurally defaulted. *See Hunton v. Sinclair*, 732 F.3d 1124, 1126-27 (9th Cir. 2013) (holding that *Martinez* does not apply to claims under *Brady v. Maryland* and noting that *Martinez* applies only to IAC claims).

The Supreme Court has described and clarified the *Martinez* cause-and-prejudice test as consisting of four necessary prongs: (1) the underlying claim of ineffective assistance of counsel must be a "substantial" claim; (2) the "cause" for the procedural default consists of there being "no counsel" or only "ineffective" counsel during the state

---

[5]       The Supreme Court recently granted a petition for writ of certiorari in a Fifth Circuit case on the issue of whether *Martinez* extends to underlying claims of IADAC. *See Davila v. Davis*, 650 F. Appx. 860 (5th Cir. May 31, 2017), *cert. granted*, 2017 WL 125677 (U.S. Jan. 13, 2017).

**MEMORANDUM DECISION AND ORDER - 15**

collateral review proceeding; (3) the state collateral review proceeding was the "initial" collateral review proceeding where the ineffective assistance of trial counsel claim could have been brought; and (4) state law requires that an ineffective assistance of counsel claim be raised in an initial-review collateral proceeding, or by "design and operation" such claims must be raised that way, rather than on direct appeal. *Trevino v. Thaler*, 133 S. Ct. 1911, 1918, 1921 (2013). The failure to meet any of these four prongs means that the *Martinez* exception is unavailable to excuse the procedural default of an IAC claim. *See Martinez*, 132 S. Ct. at 1319.

Petitioner asserts that ineffective assistance of trial, direct appeal, and post-conviction appellate counsel caused the default of Claims 1, 2, and 6 through 22. (Dkt. 41-1 at 31-32.) Petitioner did not separately exhaust any arguments that trial or direct appeal counsel was ineffective. Therefore, with respect to all of Petitioner's non-IAC claims, ineffective assistance of trial or direct appeal counsel cannot be used to excuse the default—absent an excuse for that separate default. *See Edwards*, 529 U.S. at 451-52.

With respect Petitioner's assertion that PCR appellate counsel rendered ineffective assistance,[6] the *Martinez* exception does not apply to excuse the default of Petitioner's trial or direct appeal ineffectiveness claims. Petitioner asserts that post-conviction

---

[6]     Because ineffective assistance of PCR counsel is not an independent constitutional claim, it is unclear whether *Edwards v. Carpenter*—which holds that an IAC "cause" claim must itself have been separately exhausted (or subject to an exception to procedural default)—applies to assertions of ineffective assistance of post-conviction counsel asserted as cause for purposes of the *Martinez* exception. *See Dickens v. Ryan*, 688 F.3d 1054, 1072-73 (9th Cir. 2012) (stating that a *Martinez* cause argument need not be exhausted), *op. withdrawn*, 740 F.3d 1302 (9th Cir. 2014), *on reh'g en banc*, 740 F.3d 1302 (9th Cir. 2014). The resolution of this issue is unnecessary in this case.

**MEMORANDUM DECISION AND ORDER - 16**

*appellate* counsel was ineffective in causing the default—specifically, that his appellate attorney filed a motion to voluntarily dismiss the appeal without Petitioner's consent. However, ineffective assistance of post-conviction appellate counsel *cannot* constitute cause for the default of a claim. *Martinez*, 132 S. Ct. at 1320 (noting that the exception does not apply to "attorney errors in . . . appeals from initial-review collateral proceedings"). Therefore, PCR appellate counsel's alleged ineffectiveness in moving to dismiss the post-conviction appeal does not excuse the default of any of Petitioner's IAC claims.

One other limited circumstance when PCR counsel's conduct may constitute cause is attorney abandonment. *Maples v. Thomas*, 132 S. Ct. 912, 924 (2012). However, to establish abandonment by post-conviction counsel, a petitioner must show that his attorney's inaction was so egregious that it effectively severed the attorney-client relationship and left the petitioner "without any functioning attorney of record." *Id.* at 927; *see id.* at 922-23 ("Having severed the principal-agent relationship, an attorney no longer acts, or fails to act, as the client's representative."). Mere negligence on the part of PCR counsel does not suffice, because "under well-settled principles of agency law, the principal bears the risk of negligent conduct on the part of his agent." *Id.* at 922.

Petitioner's post-conviction appellate counsel communicated with Petitioner, discussed the appeal, and informed Petitioner that counsel believed Petitioner's claims lacked merit. (Dkt. 47-1.) Petitioner acknowledges these discussions. (Dkt. 41-1 at 36.) According to Petitioner, however, although he asked his attorney to write a letter

explaining counsel's reasoning for finding the claims meritless, he did not direct counsel to dismiss the appeal on that basis. (*Id*. at 37.)

There is no evidence that Petitioner objected to the motion for voluntary dismissal in the state appellate court—which one might presume would have been his first order of business if the appeal had actually been dismissed without his consent. The Court also notes that Petitioner's PCR appellate counsel has been admitted to the Idaho State Bar for over 26 years and that he is a well-known and well-respected attorney who specializes in criminal law. Nonetheless, the Court accepts, for purposes of this decision only, Petitioner's statement that he did not authorize counsel to dismiss the appeal. Even so, however, Petitioner's submissions show—at most—that PCR appellate counsel might have misunderstood Petitioner's statements as constituting consent to dismissal.

After the discussion between Petitioner and PCR appellate counsel regarding counsel's belief that the appeal was meritless, counsel filed the motion to dismiss the appeal. (State's Lodging D-4.) The same day he filed the motion, counsel also sent Petitioner the requested letter explaining counsel's reasoning. (Dkt. 27-1 at 1-2.) The introductory portion of the letter states, "Please find enclosed a copy of the motion voluntarily dismissing your appeal. As promised, here are my thoughts about why the appeal was not meritorious." (*Id*. at 1.) That the motion was enclosed with the letter to Petitioner implies that PCR counsel believed he had previously been given authority to dismiss the appeal, and counsel's acting in accordance with that belief does not constitute abandonment. Counsel remained in contact with Petitioner at all times as a "functioning

attorney of record," *Maples*, 132 S. Ct. at 927, and did not effectively sever the attorney-client relationship.

For the foregoing reasons, the Court concludes—as a matter of law—that Petitioner cannot establish cause and prejudice to excuse the default of Claims 1, 2, and 6 through 22. Therefore, the Court will deny Petitioner's motion for an evidentiary hearing on this issue. *See Clark*, 1 F.3d at 820 ("An evidentiary hearing is not necessary to allow a petitioner to show cause and prejudice if the court determines as a matter of law that he cannot satisfy the standard.").

### B.      Actual Innocence

If a petitioner does not show cause and prejudice for his procedural default, he can still bring the claim in a federal habeas petition if he demonstrates that failure to consider the claim will result in a "fundamental miscarriage of justice," which means that a constitutional violation has probably resulted in the conviction of someone who is actually innocent. *Murray v. Carrier*, 477 U.S. at 496. Actual innocence in this context "means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998).

In asserting actual innocence, a petitioner must "support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995). A procedurally defaulted claim may be heard under the miscarriage of justice exception only if "in light of all of the evidence, 'it is more likely than not that no reasonable juror would have found

[Petitioner] guilty beyond a reasonable doubt.'" *United States v. Avery*, 719 F.3d 1080, 1083 (9th Cir. 2013) (quoting *Schlup*, 513 U.S. at 327). Stated another way, it must be more likely than not that *every* reasonable juror would vote to acquit.

This is an extremely demanding standard that "permits review only in the 'extraordinary' case." *House v. Bell*, 547 U.S. 518, 538 (2006). A court considering whether a petitioner has established actual innocence must consider "all the evidence, old and new, incriminating and exculpatory, admissible at trial or not." *Lee v. Lampert*, 653 F.3d 929, 938 (9th Cir. 2011) (en banc) (internal quotation marks omitted). The actual innocence analysis "does not turn on discrete findings regarding disputed points of fact, and '[i]t is not the district court's independent judgment as to whether reasonable doubt exists that the standard addresses.'" *House v. Bell*, 547 U.S. 518, 539-40 (2006) (quoting *Schlup*, 513 U.S. at 329 (alteration in original)). Rather, the court must "make a probabilistic determination about what reasonable, properly instructed jurors would do." *Schlup*, 513 U.S. at 329.

When a district court is considering an actual innocence gateway argument, it has the discretion to assess the reliability and probative force of the petitioner's proffer, including making some credibility determinations, if necessary. *Schlup*, 513 U.S. at 331-332. Although "habeas petitioners who assert convincing actual-innocence claims [need not] prove diligence to cross a federal court's threshold," a court "'may consider how the timing of the submission and the likely credibility of a petitioner's affiants bear on the probable reliability of evidence of actual innocence.'" *McQuiggin v. Perkins*, 133 S. Ct. 1924, 1935 (quoting *Schlup*, 513 U.S. at 332) (alterations omitted).

Petitioner has not presented any reliable evidence that he is factually innocent. Therefore, Petitioner has not satisfied his heavy burden of showing a fundamental miscarriage of justice.

## CONCLUSION

All of Petitioner's claims other than Claims 3, 4, and 5 are procedurally defaulted, and Petitioner has not shown cause and prejudice, or actual innocence, to excuse that default. Therefore, Claims 1, 2, and 6 through 22 must be dismissed.

## ORDER

**IT IS ORDERED:**

1. Petitioner's Motion to Amend (Dkt. 35) is GRANTED. The Clerk of Court shall docket the Amended Complaint (currently Dkt. 35-1) as a separate docket entry, noting the date it was initially submitted to the Court.

2. Respondent's Motion for Extension of Time (Dkt. 37) is GRANTED.

3. Petitioner's request for appointment of counsel (contained in Dkt. 41-1) is DENIED.

4. Petitioner's Motion to Expand the Record (Dkt. 42) is GRANTED IN PART to the extent set forth above.

5. Respondent's Motion to File Oversize Brief (Dkt. 43) is GRANTED.

6. Petitioner's Supplemental Motion to Expand the Record (Dkt. 47) is GRANTED IN PART to the extent set forth above.

7. Petitioner's Motion for an Evidentiary Hearing (Dkt. 50) is DENIED.

8.    Respondent's Motion for Partial Summary Dismissal (Dkt. 39) is

GRANTED. Claims 1, 2, and 6-22 are DISMISSED with prejudice.

9.    Respondent shall file an answer to the remaining claims (Claims 3, 4, and

5) within 90 days of the date of this Order. Petitioner shall file a reply

(formerly called a traverse), containing a brief rebutting Respondent's

answer and brief, which shall be filed and served within 30 days after

service of the answer and brief. Respondent has the option of filing a sur-

reply within 14 days after service of the reply. At that point, the case will

be deemed ready for a final decision.

DATED: January 27, 2017

B. Lynn Winmill
Chief Judge
United States District Court