UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

JERRY LEONARD ELLIS,

                    Petitioner,

v.

STEVEN LITTLE, Warden, Southern
Idaho Correctional Institution,

                  Respondent.

Case No. 1:15-cv-00515-BLW

**MEMORANDUM DECISION AND ORDER**

Pending before the Court is an Amended Petition for Writ of Habeas Corpus filed by Idaho state prisoner Jerry Leonard Ellis ("Petitioner" or "Ellis"), challenging Petitioner's convictions of felony driving under the influence ("DUI"). (Dkt. 54.) The Court previously dismissed, as procedurally defaulted, Claims 1, 2, and 6 through 22 of the Amended Petition. (Dkt. 53.) The merits of the remaining claims—Claims 3, 4, and 5—are now fully briefed and ripe for adjudication.[1] (Dkt. 61, 62, 64.) The Court takes judicial notice of the records from Petitioner's state court proceedings, which have been

---

[1] In his merits briefing, Petitioner includes arguments as to claims that the Court previously held to be procedurally defaulted. The Court will not address those arguments, as those claims have already been dismissed.

**MEMORANDUM DECISION AND ORDER - 1**

lodged by Respondent. (Dkt. 16, 30.) *See* Fed. R. Evid. 201(b); *Dawson v. Mahoney*, 451 F.3d 550, 551 n.1 (9th Cir. 2006).

Having carefully reviewed the record in this matter, including the state court record, the Court concludes that oral argument is unnecessary. *See* D. Idaho L. Civ. R. 7.1(d). Accordingly, the Court enters the following Order denying habeas corpus relief on Petitioner's remaining claims.

## BACKGROUND

Petitioner pleaded guilty in two felony DUI cases. He was given suspended sentences of incarceration and placed on probation. Petitioner had multiple opportunities to help him succeed on probation—for example, Petitioner was granted a place in the mental health court program—but he did not.

Instead, Petitioner consistently failed to comply with the terms of his probation. However, he was given numerous chances to avoid prison. This Court has previously recounted Petitioner's "ongoing cycle of probation, violation, and retained jurisdiction" and will not do so again here. (Dkt. 53 at 3.) It suffices to state that, in 2013, Petitioner was—yet again—charged with violating his probation in both of his felony DUI cases.

At the beginning of the admit/deny hearing on the probation violation charges, as later explained by the Idaho Court of Appeals, Petitioner requested a continuance "to obtain an updated mental health evaluation":

> Ellis claimed he was not feeling well on his medication that particular day and, specifically, that he was feeling extremely overwhelmed. The district court explained that Ellis was receiving his medication in jail and that neither the district

court, the state, nor those responsible for Ellis's regular treatment was aware of any complaint, prior to the hearing, that Ellis was not feeling stable on his medication. The district court further explained that there was a difference between not feeling well and being incompetent and that it found no evidence that there was a lack of competency or an inability to assist counsel. Explaining that it had reviewed Ellis's file and believed that there was a pattern of delay every time there was a prospect of prison, the district court did not find Ellis's complaint credible and, therefore, denied Ellis's motion for continuance.

(State's Lodging B-5 at 2.)

Petitioner then requested a continuance on a different basis—to retain private counsel. The court denied the request, "again explaining that it believed Ellis's request was a delay tactic." (State's Lodging B-5 at 2.)

Petitioner admitted one of the violations—that he had driven without privileges—and denied another—that he had been terminated from the mental health court program for noncompliance.[2] (*See* State's Lodging A-2 at 503-04; A-7.) After an evidentiary hearing, the state district court found the noncompliance allegation proven. (State's Lodging A-7 at 8-15.) The court then stated that it would proceed immediately to the revocation/disposition stage of the proceedings. (*Id.* at 15.) Petitioner asked that the court "continue the disposition portion of the hearing because his witnesses were not at the hearing to testify on his behalf." (State's Lodging B-2 at 5.) Petitioner's attorney said that the reason the witnesses were not at the hearing was the attorney's belief that "this was simply the admit/deny hearing on it." (State's Lodging A-7 at 16.)

---

[2] The state withdrew a third violation. (State's Lodging A-7 at 8.)

**MEMORANDUM DECISION AND ORDER - 3**

Petitioner made an offer of proof as to the testimony that Petitioner's witnesses would give. The court accepted that offer as true and denied the motion to continue. (*Id.* at 16-18.) After allowing Petitioner to make a statement, the court revoked probation and ordered execution of the underlying sentences. (State's Lodging B-5 at 2.)

On appeal, the Idaho Court of Appeals held that the district court did not violate Petitioner's right to counsel of choice. (State's Lodging B-5 at 2-4.) This counsel-of-choice claim is presented as Claim 3 of the Amended Petition.

With respect to Petitioner's claim that the district court's failure to notify Petitioner that the hearing would include disposition, which corresponds to Claim 4 of the Amended Petition, the court of appeals assumed error, but found that error harmless. (*Id.* at 4-6.)

Although the state court did not separately address Petitioner's claim that the trial court should have continued the disposition hearing so Petitioner could present witnesses—presented here as Claim 5—that claim is inextricably intertwined with Claim 4. Therefore, the Court presumes that the Idaho Court of Appeals adjudicated Claim 5 on the merits and rejected it for the same reasons as Claim 4—that the failure to grant the continuance was harmless. *See Harrington v. Richter*, 562 U.S. 86, 99 (2011) ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary.").

The Idaho Supreme Court denied review of Petitioner's appeal. (State's Lodging B-8.)

Because the Idaho Court of Appeals adjudicated the merits of Claims 3, 4, and 5, this Court may not, and therefore does not, consider the additional documents submitted by Petitioner—which were not presented to the state court—in its merits review of those claims.[3] *See Cullen v. Pinholster*, 563 U.S. 170, 180 (2011).

## HABEAS CORPUS STANDARD OF LAW

Federal habeas corpus relief may be granted on claims adjudicated on the merits in a state court judgment when the federal court determines that the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Under § 2254(d), as amended by the Anti-terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), federal habeas relief is further limited to instances where the state court's adjudication of the petitioner's claim

> (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

---

[3]    The Court previously did consider Petitioner's extra-record evidence for purposes of its procedural default analysis, as permitted by *Dickens v. Ryan*, 740 F.3d 1302, 1320-21 (9th Cir. 2014) (en banc) (holding that neither *Pinholster* nor 28 U.S.C. § 2254(d)(2) bars new evidence considered for purposes of the cause and prejudice exception to procedural default). (*See* Dkt. 53 at 8.)

**MEMORANDUM DECISION AND ORDER - 5**

28 U.S.C. § 2254(d). "Deciding whether a state court's decision involved an unreasonable application of federal law or was based on an unreasonable determination of fact requires the federal habeas court to train its attention on the particular reasons— both legal and factual—why state courts rejected a state prisoner's federal claims and to give appropriate deference to that decision." *Wilson v. Sellers*, 138 S. Ct. 1188, 1191-92 (2018) (internal quotation marks and citations omitted).

When a party contests the state court's legal conclusions, including application of the law to the facts, § 2254(d)(1) governs. That section consists of two alternative tests: the "contrary to" test and the "unreasonable application" test.

Under the first test, a state court's decision is "contrary to" clearly established federal law "if the state court applies a rule different from the governing law set forth in [the Supreme Court's] cases, or if it decides a case differently than [the Supreme Court] [has] done on a set of materially indistinguishable facts." *Bell v. Cone*, 535 U.S. 685, 694 (2002). Under the second test, to satisfy the "unreasonable application" clause of § 2254(d)(1) the petitioner must show that the state court—although identifying "the correct governing legal rule" from Supreme Court precedent—nonetheless "unreasonably applie[d] it to the facts of the particular state prisoner's case." *Williams (Terry) v. Taylor*, 529 U.S. 362, 407 (2000). "Section 2254(d)(1) provides a remedy for instances in which a state court unreasonably applies [Supreme Court] precedent; it does not require state courts to extend that precedent or license federal courts to treat the failure to do so as error." *White v. Woodall*, 134 S. Ct. 1697, 1706 (2014) (emphasis omitted).

A federal court cannot grant habeas relief simply because it concludes in its independent judgment that the decision is incorrect or wrong; rather, the state court's application of federal law must be objectively unreasonable to warrant relief. *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003); *Bell*, 535 U.S. at 694. If there is any possibility that fair-minded jurists could disagree on the correctness of the state court's decision, then relief is not warranted under § 2254(d)(1). *Richter*, 562 U.S. at 102. The Supreme Court has emphasized that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* To be entitled to habeas relief under § 2254(d)(1), "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103.

Though the source of clearly-established federal law must come only from the holdings of the United States Supreme Court, circuit precedent may be persuasive authority for determining whether a state court decision is an unreasonable application of Supreme Court precedent. *Duhaime v. Ducharme*, 200 F.3d 597, 600-01 (9th Cir. 2000). However, circuit law may not be used "to refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that th[e] Court has not announced." *Marshall v. Rodgers*, 569 U.S. 58, 64 (2013).

"[R]eview under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Pinholster*, 563 U.S. at 180. This means

that evidence not presented to the state court may not be introduced on federal habeas review if a claim was adjudicated on the merits in state court and if the underlying factual determinations of the state court were reasonable. *See Murray v. Schriro*, 745 F.3d 984, 999-1000 (9th Cir. 2014); ("After *Pinholster*, a federal habeas court may consider new evidence only on de novo review, subject to the limitations of § 2254(e)(2)."); *Hurles v. Ryan*, 752 F.3d 768, 778 (9th Cir. 2014) ("If we determine, considering only the evidence before the state court, that the adjudication of a claim on the merits ... was based on an unreasonable determination of the facts, we evaluate the claim de novo, and we may consider evidence properly presented for the first time in federal court.").

To be eligible for relief under § 2254(d)(2), the petitioner must show that the state court decision was based upon factual determinations that were "unreasonable ... in light of the evidence presented in the State court proceeding." A "state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010); *see also Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) ("The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold."). State court factual findings are presumed correct and are binding on the federal court unless the petitioner rebuts that presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

If a petitioner satisfies § 2254(d)—either by showing that the state court's adjudication of a claim was contrary to, or an unreasonable application of, Supreme Court law or by establishing that the state court's factual findings were unreasonable—then the federal court must review the petitioner's claim de novo. *Hurles*, 752 F.3d at 778. De novo review is also required where the state appellate court did not decide a properly-asserted claim or where an adequate excuse for the procedural default of a claim exists. *Pirtle v. Morgan*, 313 F.3d 1160, 1167 (9th Cir. 2002); *Dickens v. Ryan*, 740 F.3d 1302, 1321 (9th Cir. 2014) (en banc).

Generally, even if a habeas petitioner succeeds in demonstrating a constitutional error in his conviction, he is entitled to relief only if he can also show that he was prejudiced by that error. Most constitutional errors are subject to some type of harmless-error analysis. On direct appeal, a constitutional error can be considered harmless only if the prosecution proves that it was "harmless beyond a reasonable doubt," as explained in *Chapman v. California*, 386 U.S. 18, 24 (1967); *see also Davis v. Ayala*, 135 S. Ct. 2187, 2197 (2015) ("[I]n the absence of the rare type of error that requires automatic reversal, relief is appropriate only if the prosecution cannot demonstrate harmlessness.") (internal quotation marks omitted).

The test for harmless error on federal habeas review, however, is different from—and stricter than—the *Chapman* standard. Petitioners generally are not "entitled to habeas relief based on trial error unless they can establish that [the error] resulted in 'actual prejudice.'" *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993). Under the *Brecht* standard,

an error is not harmless, and habeas relief must be granted, only if the federal court has "grave doubt about whether a trial error of federal law had substantial and injurious effect or influence in determining" the outcome of the proceeding. *O'Neal v. McAninch*, 513 U. S. 432, 436 (1995) (internal quotation marks omitted). A "reasonable possibility" of prejudice is insufficient. *Brecht*, 507 U.S. at 637. In addition, the petitioner, rather than the State, has the burden of showing prejudice.

AEDPA's deferential standard—restricting habeas relief to cases where the state court's decision was objectively unreasonable—applies to a state court's harmlessness determination. *Ayala*, 135 S. Ct. at 2198-99. Thus, in addition to the *Brecht* standard, a federal court on habeas review considers whether fairminded jurists could debate whether the state court's *Chapman* analysis was reasonable. *See Richter*, 562 U.S. at 101. The *Brecht* analysis "subsumes" the AEDPA standard, *Fry v. Pliler*, 551 U.S. 112, 120 (2007), and although a federal court "need not formally apply both *Brecht* and AEDPA/*Chapman*," section 2254(d) "nevertheless sets forth a precondition to the grant of habeas relief." *Ayala*, 135 S. Ct. at 2198 (internal quotation marks and alteration omitted).

## DISCUSSION

For the reasons that follow, Petitioner is not entitled to habeas relief on his remaining claims.

1.      **Claim 3: Denial of Continuance to Retain Counsel of Choice**

    *A.      Relevant Facts*

    Immediately before the admit/deny portion of the hearing, Petitioner told the court

he was not ready to proceed because his preferred counsel was not available:

| | |
|---|---|
| The Defendant: | I understand the allegations against me, Your Honor, but I'm not ready to proceed. |
| The Court: | Okay, then the next question I have is whether you admit or deny those ... allegations. I'll take them one at a time. Allegation Number One, that you were terminated from Kootenai County Mental Health Court for noncompliance, do you admit that allegation? |
| The Defendant: | Your Honor, I believe I'm going to have to retain counsel at this point. Um— |
| The Court: | You have counsel. Do you admit or deny that allegation? |
| The Defendant: | I understand that, but I'm not prepared here today, and I've already talked with John Redal [a private attorney]. He's not going to be here, and he asked me to get a continuance today until he gets back on the 8th to represent me in this matter. |
| The Court: | Okay, he is not here today. You have an attorney. I'm going to enter a denial for you on allegation one.... |

(State's Lodging A-7 at 7.)

    The trial court later expressly found that, by requesting new counsel, Petitioner

was intending to delay the proceedings:

> You have shown an incredible inability to delay these
> proceedings every time you face prison, and I know I wasn't

> your judge back in 2006, but I look at what happened back in 2006. It took eleven months for you to enter a plea on felony DUI. Every time you've had a probation violation where prison is the recommendation you manage to draw it out into a six, seven, eight-month ordeal before you even go on a rider, and you showed every ability to do that here again today.
>
> ....
>
> .... You—your claim today that you wanted to hire John Redal, who's a fine attorney ..., but the best attorney you've ever had is seated to your left. Your claim that you wanted John Redal today was made nothing—for no other reason than to create delay. That's my specific finding....

(*Id*. at 48-49.) The court denied Petitioner's request for a continuance.

### B.    *Clearly-Established Law*

In Claim 3, Petitioner asserts that the trial court deprived him of his right to counsel of his choice when it denied his request to continue the proceedings so that he could retain a different attorney.

The Sixth Amendment guarantees criminal defendants the right to the assistance of counsel, including the "right of a defendant who does not require appointed counsel to choose who will represent him." *Wheat v. United States*, 486 U.S. 153, 159 (1988). However, because "the essential aim of the [Sixth] Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers," the right to counsel of one's choice "is circumscribed in several important respects." *Id*.

One of these respects is court scheduling and docket management. Trial courts have "broad discretion ... on matters of continuances," even when the reason for the

requested continuance is to retain counsel of one's choice. *Morris v. Slappy*, 461 U.S. 1, 11 (1983). Consequently, the denial of such a continuance violates the right to counsel of choice only if it constitutes "an unreasoning and arbitrary 'insistence upon expeditiousness in the face of a justifiable request for delay.'" *Id*. at 11-12 (quoting *Ungar v. Sarafite*, 376 U.S. 575, 589 (1964)). *See also Gonzalez-Lopez*, 548 U.S. at 152 ("We have recognized a trial court's wide latitude in balancing the right to counsel of choice against the needs of fairness and against the demands of its calendar.") (internal citation omitted). Where a defendant's request for a continuance to retain counsel of his choice is made for purposes of delay, a judge may deny the continuance and require the accused to proceed as represented by his current counsel. *See, e.g., United States v. Vallery*, 108 F.3d 155, 157 (8th Cir. 1997) ("The right to choice of counsel must not obstruct orderly judicial procedure or deprive courts of their inherent power to control the administration of justice. If a defendant's attempted exercise of his choice is dilatory, the trial court can require him to proceed with designated counsel.") (internal quotation marks and citation omitted).

Denial of the right to counsel of choice is considered structural error. This means that, if a habeas petitioner succeeds in demonstrating a violation of his right to counsel of choice, he need not show *Brecht* prejudice. *United States v. Gonzalez-Lopez*, 548 U.S. 140, 148 (2006) ("Where the right to be assisted by counsel of one's choice is wrongly denied ... it is unnecessary to conduct an ineffectiveness or prejudice inquiry to establish a Sixth Amendment violation. Deprivation of the right is 'complete' when the defendant

is erroneously prevented from being represented by the lawyer he wants, regardless of the quality of the representation he received.").

### C.    *Petitioner Is Not Entitled to Relief on Claim 3*

For two reasons, Petitioner has not met his burden to show that the Idaho Court of Appeals' rejection of Claim 3 was unreasonable under § 2254(d). First, the United States Supreme Court has never held that the Sixth Amendment right to counsel of one's choice extends to a probation revocation proceeding. Indeed, because revocation proceedings are "not a stage of a criminal prosecution," the Sixth Amendment right to counsel does not apply to such proceedings at all—at least where, as here, the sentence was imposed, suspended, and later ordered executed following revocation.[4] *Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973); *see also Morrissey v. Brewer*, 408 U.S. 471, 480 (1972) ("[T]he full panoply of rights due a defendant in [a criminal prosecution] does not apply to [probation or] parole revocations."). And although the Due Process Clause includes, in *some* cases, the right to counsel during revocation proceedings,[5] there is no clearly-

---

[4]    The right to counsel does, however, extend to probationers in revocation-and-sentencing proceedings where the sentence had been deferred, but not actually imposed. *Mempa v. Rhay*, 389 U.S. 128, 136–37 (1967).

[5]    There is no "inflexible constitutional rule" that an attorney must be appointed for indigent defendants in every probation or parole revocation hearing. *Gagnon*, 411 U.S. at 790. However, "there will remain certain cases in which fundamental fairness—the touchstone of due process—will require that the State provide at its expense counsel for indigent probationers or parolees." *Id.* Therefore, whether there is a right to counsel during a revocation proceeding must be analyzed on a case-by-case basis. *Id.* ("[T]he decision as to the need for counsel must be made on a case-by-case basis in the exercise of a sound discretion by the state authority charged with responsibility for administering the probation and parole system.").

established Supreme Court precedent that the Due Process Clause includes a right to counsel of choice—as opposed to a right to counsel in general—in any such proceeding.

Second, even if the right to counsel-of-choice does apply in probation revocation proceedings, the Idaho Court of Appeals' decision—that the trial court's denial of the continuance did not violate that right—was not objectively unreasonable under § 2254(d). The state appellate court analyzed Petitioner's counsel-of-choice claim as follows:

> At the hearing, Ellis sought a continuance in order to obtain private counsel. Ellis explained that he had spoken to private counsel who told Ellis to seek a continuance until counsel was available to represent Ellis in the matter, approximately eighteen days later....
>
> In this case, it appears the district court believed the motion for continuance to obtain private counsel was an attempt to manipulate the proceedings, which is supported by Ellis's multiple requests for a continuance at the hearing. The district court explained that "every time you've had a probation violation where prison is the recommendation you managed to draw it out into a six, seven, eight month ordeal before you even go on a rider, and you showed every ability to do that here again today." The district court further explained that Ellis already had an attorney, who was present at the hearing, and that Ellis's claim that he wanted private counsel "was made ... for no other reason than to create delay." Further, there was no evidence presented to the district court of any conflict between Ellis and his counsel supporting his request for substitute counsel. The district court properly weighed the factors relevant to Ellis's case and ultimately exercised its discretion to deny Ellis's motion for continuance to obtain private counsel. Ellis has failed to show that the district court abused its discretion in denying his motion for continuance to obtain private counsel, and thus the district court did not err in denying Ellis's motion.

(State's Lodging D-5 at 3-4.)

The state appellate court was well within its authority to rely on the factual finding of the trial court that Petitioner's request for a continuance was made for purposes of delay. Its adoption of that finding was not unreasonable under AEDPA, and Petitioner has not rebutted the presumption of correctness found in § 2254(e)(1). Because the law allows trial courts wide latitude with respect to scheduling, *see Morris*, 461 U.S. at 11; *see also Vallery*, 108 F.3d at 157, the Idaho Court of Appeals reasonably concluded that Petitioner was not unconstitutionally deprived of his right to counsel of choice—even assuming such a right applies in revocation proceedings.

2.    **Claims 4 and 5: Lack of Notice of Immediate Revocation/Disposition Hearing Following Admit/Deny Hearing, and Denial of Continuance So Petitioner's Witnesses Could Testify**

In Claims 4 and 5, Petitioner asserts that he was denied due process when the trial court failed to notify Petitioner that the hearing would be both an admit/deny hearing and a revocation/disposition hearing (Claim 4), as well as when the court denied Petitioner's motion to continue the disposition proceeding so he could call witnesses on his behalf (Claim 5). As noted previously, the Idaho Court of Appeals found any error to be harmless. Because Claims 4 and 5 are closely related, the Court will address them together.

A.    *Relevant Facts*

After the evidentiary hearing, the trial court proceeded immediately to the revocation/disposition stage of the proceedings. Petitioner's counsel responded that the defense was not ready for its disposition presentation:

| | |
|---|---|
| Mr. Whitaker: | I would like the opportunity, in speaking with Mr. Ellis, to call a couple of witnesses on his behalf. Specifically, I'm thinking about calling his mother and his girlfriend. His mother's not here today. I have not been able to get a hold of her, a so I would ask the Court to set this out for next week. I can be prepared to go on Thursday and have my witnesses all lined up. |
| The Court: | What is the reason why those witnesses aren't here today? |
| Mr. Whitaker: | Well, Your Honor, this was just simply the admit/deny hearing on it, and he did deny. We went directly to evidentiary, and I guess at this point in time that's all I can let the Court know. They just simply are not here. |
| The Court: | All right. What, as an offer of proof, would these witnesses testify about? |
| Mr. Whitaker: | Well, Your Honor, big issue here is the State is recommending that my client go to prison. He has a rather lengthy suspended prison sentence over his head. I think we're—have moved away from the retained jurisdiction portion of that. I am not only going to ask the Court to modify the sentence, I plan on asking the Court to place Mr. Ellis on probation, and, uh, I think that having his mother, who this court is well aware having been so close to Mr. Ellis, um, I think I need her to testify about how well he's done and whether she believes that he would be a threat to the community because that's one of the issues—that is the main issue that the Court has to look at at sentencing, so I do believe I need her here for some mitigation, anticipating what the State is going to be recommending. |

....

**MEMORANDUM DECISION AND ORDER - 17**

| The Court: | What specifically would she testify about as far as not being a threat to the community? |
|---|---|
| Mr. Whitaker: | Well, Your Honor, I don't know. I'm assuming that she—I'm not quite sure, to be honest with the Court. I think that she can testify that he has lived with her and, uh, has seen him in the community. I know there's all kinds of allegations that are, I guess for lack of a better term, hearsay allegations about him driving, when he's been driving whether he's been drinking alcohol, and I think that the person who is closest to him would be relevant to that discussion, and he also has a—he's indicating to me, Your Honor, that he wants to call his sponsor. |
| The Court: | And what, as an offer of proof, would the sponsor say? |
| Mr. Whitaker: | Your Honor, I believe that he has been clean and been working the steps. |

(State's Lodging A-7 at 17-18.)

The trial court accepted "that everything that's been said today in the offer of proof would be proven and would be found as the Court to be true" and denied the motion for a continuance. (*Id*. at 18.) The court proceeded to revoke probation and order execution of Petitioner's sentences.

### B.     *Clearly-Established Law*

The clearly-established law regarding harmless error is the *Chapman* standard set forth above.

## C.      Petitioner Is Not Entitled to Relief on Claims 4 or 5

The state court assumed, without deciding, that the trial court had improperly

proceeded to the disposition stage without providing adequate notice or granting a

continuance for Petitioner to prepare a defense. (State's Lodging B-5 at 5.) However, the

court held that any due process violation was harmless. In doing so, the Idaho Court of

Appeals correctly relied on the *Chapman* standard—that the prosecution must prove

harmlessness beyond a reasonable doubt.[6] (*Id.*) ("Where a defendant meets his or her

initial burden of showing that a constitutional violation has occurred, the state has the

burden of demonstrating to the appellate court beyond a reasonable doubt that the

violation did not contribute to the jury's verdict."). Thus, the decision was not contrary to

Supreme Court precedent.

Next, the Court considers whether the state court unreasonably applied the

harmless-error standard. The state court analyzed harmlessness as follows:

> Even if the district court erred by failing to notify Ellis of the
> nature of the proceedings, it was irreversible harmless error
> because Ellis was not prejudiced by the absence of his
> witnesses. *The district court was clear that its decision to
> revoke Ellis's probation and impose the previously suspended
> sentences was based entirely upon public safety concerns.*
> The district court described Ellis's considerable history of
> DUIs and driving without privileges and explained that *Ellis's
> sentences were being imposed because Ellis admittedly drove
> without privileges.* Ellis's offer of proof, which was accepted

---

[6]      Though the court of appeals did not cite *Chapman*, such citation is not required. *See Early v.
Packer*, 537 U.S. 3, 8 (2002) ("Avoiding [AEDPA's] pitfalls does not require citation of our cases—
indeed, it does not even require *awareness* of our cases, so long as neither the reasoning nor the result of
the state-court decision contradicts them."). The Idaho Court of Appeals did cite *State v. Perry*, an Idaho
case that discussed *Chapman*. *See Perry*, 245 P.3d 961, 973 (2010) ("In Idaho, the harmless error test
established in *Chapman* is now applied to all objected-to error.").

by the district court, provided *no evidence that he was not a public safety concern, except Ellis's mother's opinion on the matter. Thus, even if the witnesses had been available and testified according to Ellis's offer of proof, Ellis has failed to show that the testimonies would have had any effect on the district court's decision*, which was made having accepted the offer of proof as evidence and having taken the evidence into consideration when the district court made its ruling. Therefore, Ellis was not prejudiced and, if the district court violated Ellis's due process right, the error was irreversible harmless error.

(State's Lodging B-5 at 5-6 (emphasis added).)

The court of appeals' decision was not objectively unreasonable under § 2254(d)(1). The trial court accepted Petitioner's offer of proof as truth. However, notwithstanding that evidence, the court stated that the revocation was based entirely on its concern for public safety, as Petitioner—who had nine DUIs—consistently refused to refrain from driving without privileges in violation of his probation. Because the court accepted the offer as established proof, the prosecution proved beyond a reasonable doubt that the witnesses' testimony would not have changed the outcome of the revocation/disposition proceedings, and the court of appeals' decision on that basis was reasonable.

Nor has Petitioner established, by clear and convincing evidence, that the court of appeals' factual finding as to the district court's motivation—concern for public safety— was incorrect or unreasonable.[7] At the disposition stage of the hearing, Petitioner made a

---

[7] Petitioner contends that the district court violated the Constitution by relying on alleged hearsay statements to conclude that protecting the public required revocation of probation. (Reply, Dkt. 63-1, at 19-21.) Because the Sixth Amendment right of confrontation does not apply in probation revocation proceedings—and, therefore, there is no absolute bar to testimonial hearsay being considered in such

lengthy statement, and counsel for both sides presented their arguments. After hearing

from all parties, the trial court stated clearly, numerous times, that the decision to revoke

Petitioner's probation was motivated *solely* by the desire to keep the community safe:

> Mr. Ellis, I am going to revoke your probation ....
>
> ....
>
> ... I need to make some comments on the various things that I've heard. First of all, *this is a decision that is based entirely on public safety*, and you can shake your head and disagree with me, Mr. Ellis, but *that's the entire reason I'm sending you to prison. You drove.* Judge Gibler told you when you received the benefit of another felony DUI in 2011 that was dismissed if you can get into this program, Judge Gibler told you that, "I don't have a lot of comfort that you won't get behind the wheel. This is a really tough decision for me. I'm not a hundred percent convinced this is the right decision to place you back on probation and have you do the mental health court." Judge Gibler went out on a huge limb to get you into this program.
>
> I went out even further the first time you messed up in the mental health court program and sent you on your third retained. You can do just fine on a retained, but what you can't do, what you've shown your inability to do is not get behind the wheel when you don't have the ability to do that, *so it's really entirely about allegation number two which you admitted to that you committed the misdemeanor crime of driving without privileges, that's the reason you're going to*

---

proceedings—Petitioner appears to allege that the trial court's consideration of hearsay evidence violated his right to due process. *See United States v. Hall*, 419 F.3d 980, 985 (9th Cir. 2005) ("Because revocation deprives an individual, not of the absolute liberty to which every citizen is entitled, but only of the conditional liberty properly dependent on observance of special parole restrictions the full protection provided to criminal defendants, including the Sixth Amendment right to confrontation, does not apply to them. Rather, a due process standard is used to determine whether hearsay evidence admitted during revocation proceedings violates a defendant's rights (internal quotation marks, alteration, and citation omitted). The Court need not address this issue, as the Amended Petition does not raise such a claim and, even if it did, the claim would be procedurally defaulted. (*See* Dkt. 53.)

*prison.* You, as [the prosecutor] pointed out, have I think it is *nine prior DUIs that haven't been dismissed.*

You spent it must have been close to an hour speaking, and I want to thank you for providing evidence of your competence for the Idaho appellate courts. I have every confidence that you will appeal my decision today, and I think you've done a great job establishing exactly why your claim that you don't understand what's going on here, this is going way too fast, all that is simply talk. I specifically find you not to be credible in those claims. You've never once in the three years that I've known you since coming into this program, not once have you claimed not to be stable on your mental health medications. Even if you were credible that you're not feeling well right now, that's in fact nothing to do—*that's got nothing to do with your decision on February 21st, 2013, to get behind the wheel and drive. Doesn't have anything to do with that at all.* That's my finding.

....

*This is the only way I can protect the public.* We have tried and tried to do that in the mental health court program, and you are the reason that that has failed. Nobody else.

(State's Lodging A-7 at 45-50.)

This recitation fully supports the state appellate court's conclusion that the trial court's revocation decision was motivated entirely by public safety concerns and that Petitioner suffered no prejudice from not being able to present live testimony at the disposition hearing.

## CONCLUSION

For the foregoing reasons, the Idaho Court of Appeals' rejection of Claims 3, 4, and 5 was not unreasonable under § 2254(d), and those claims will be denied. Because

Claims 1, 2, and 6 through 22 have already been dismissed, judgment will be entered in favor of Respondent.

## ORDER

**IT IS ORDERED:**

1.  Petitioner is not entitled to habeas relief on Claims 3, 4, and 5—the only remaining claims. Therefore, the Amended Petition for Writ of Habeas Corpus (Dkt. 54) is DISMISSED IN PART and DENIED IN PART.

2.  The Court does not find its resolution of this habeas matter to be reasonably debatable, and a certificate of appealability will not issue. *See* 28 U.S.C. § 2253(c); Rule 11 of the Rules Governing Section 2254 Cases. If Petitioner intends to appeal, he must file a timely notice of appeal with the Clerk of Court. Petitioner may seek a certificate of appealability from the Ninth Circuit by filing a request in that court.

DATED: December 11, 2018

B. Lynn Winmill
Chief U.S. District Court Judge